21-4044, Gordon v. Jordan School District. Mr. Washburn, are you ready to be heard? Thank you, Your Honor. May it please the court and counsel, in 2017, the plaintiffs in this case sued three school districts and the Utah High School Activities Association, the organization responsible for choosing what sports will be offered by high schools in the state of Utah. They brought claims under the Equal Protection Act and under Title IX. The basis for the Equal Protection Act claims is that the most popular sport in the United States among high school students, football, is effectively not offered to girls, and in fact is classified by the Utah High School Activities Association and the school districts as a boys' sport. They argued that that was a violation of the Equal Protection Clause. We also argued in trial there were violations of Title IX because there were not equal participation opportunities for girls, and specifically because the school districts failed to offer girls tackle football, notwithstanding that there was interest, ability to field teams, and a realistic possibility of interstate or interscholastic competition. Those two claims are still here before the court. I want to address the Equal Protection Clause first. And fundamentally, the Equal Protection Clause claimed here before this court will turn on whether there's been a gender-based classification. Since the Supreme Court's decision in Feeney, if the Supreme Court established that if there's been a classification based on gender, then intermediate scrutiny applies. So you would acknowledge that if we, rightly or wrongly, conclude that letting girls and boys play on one team is facially neutral, that you're conceding that it would survive rational basis scrutiny? Well, I think I would frame it differently. I agree that if you were to find that there's not been a gender classification in sport, then we've not argued that it wouldn't survive rational basis. The reason I make a different kind of framing there is that it's certainly the case, and Feeney and other cases establish this, that it's not required that there be absolute exclusion. So for example, if occasionally there is a practice of allowing, not saying classifying a sport as a boys' sport, if you occasionally allow a girl to participate, you still have a classification that I think would inch you up in that intermediate scrutiny. But to the extent your question is, if you find that rational basis review applies, do I lose? I would say yes. I think it's just as simple as the question, what level of scrutiny applies? And that turns on whether a classification's been made. And here, if the classification is neutral on its face, then for there to be an equal protection violation, you need to show discriminatory intent, do you not? Exactly. And Your Honor, my intent with Judge Bacharach's questions was to say that we don't believe that the district court's ruling would be wrong if that were the level of scrutiny that applies. So your argument depends, your equal protection argument at least, depends on our determining that this is not neutral on its face. Correct. And the way we can determine that, as clear as could possibly happen, there's been a classification based on gender in this case, is a declaration that was filed by the Utah High School Activities Association in the docket before the district court. The context of that was that the school districts were attempting to resist a summary judgment on part two of the effective accommodation test under Title IX. They elicited and received a declaration from the executive director of the Utah High School Activities Association. That document is found in volume 14 at at least 3649 to 3655. It's a little skimwampus. I can just tell you that when it was filed before the district court, the pages were out of order. So when you see that, don't be surprised by that. But in this declaration, the executive director of the Utah High School Activities Association, and I think it bears quoting, said, attached here to his exhibit one is a table showing the boys and girls sports added to Utah High School interscholastic competition since the first sport, boys football, was started in 1898. And then that exhibit one is a document that lists every sport that was then presently offered or was planned to be offered in the case of lacrosse in a column that either said boys or girls. Football existed only in the column of boys. Now, this is not an aberration. When the same executive director of Utah High School Activities Association testified before the Utah state legislature as he testified at trial, he said the High School Activities Association sponsored 10 boys sports and 10 girls sports. In the manual that was in force at the time he filed the lawsuit, the High School Activities Association said it sponsored 10 boys sports and 10 girls sports. But getting out into all of the facts that we elicited at trial, I don't think is necessary. I don't think you need to look beyond that very declaration that was filed in this case. Would we have to evaluate that under the prism of clear error since the Equal Protection Clause was adjudicated, tried, and there were factual findings that we have to scrutinize? There certainly are factual findings. I think this actually is a mixed question of fact and law. It's the application of law to those facts. And I think that fact itself, being in the docket of the court is not one that the district court was particularly any better suited than this court to evaluate that declaration that was filed in the docket. But I think either way, whether it's clear error or whether we're talking about a de novo review because of the mixed question, either way, that declaration shows that the district court's finding that there was not a classification based on gender is simply, clearly erroneous. That document is the platonic ideal of a classification based on gender, a column that says boys and a column that says girls. I think the best way to illustrate that is to say. Does it matter at all what the practice was? Well, I think the practice, certainly in Feeney, there's discussion of you can have a covert or an overt classification by gender. And so I think implicit in that is that if you can have a covert classification based on gender, then practice applies. This is an unusual case. Because in most instances, what you see is there's an overt neutral classification with maybe a covert application. That's sort of like if you look at Yick Woo, there was maybe neutral on its face, but all of the Chinese laundry owners had their applications denied. Well, here there's some evidence of neutral. It was described as tackle football in other documents, was it not? Your Honor, there are times that the sport was described as tackle football. What you will not see in any written document that predates the filing of our lawsuit is a reference, a policy that says girls are allowed to play, a policy that calls it co-ed football or gender neutral football or anything like that. The closest you'll get, the district court hung on this, was a list of sports with some parentheticals next to it. Those parentheticals are never decoded. It's not clear what they mean. It's not clear that they say, hey, girls can play. And when they were asked a child, the school district officials were asked, where would we see this policy? Where would a girl who wanted to know, can I play football, be able to look to see a clear indication that she was allowed? And they couldn't point us anywhere. In fact, one of the plaintiffs who testified, who was Nogales, testified that at her first high school, she was told she could not play, and she had to transfer high schools where there was another coach who would allow women to play. So the practice, it's not a policy, it's not a written policy anywhere that you could find that girls are allowed to play. There was a practice. I think the best analogy, sorry, your honor. I was going to ask, what relief are you seeking on the equal protection claim? Your honor, under the equal protection claim, I think in our briefing, we set out pretty extensively that the relief that we think is most appropriate, that happens in these athletics cases, would be to order the school district, and for that matter, High School Activities Association, to separately sanction girls' football. This is a rare place. But you're just seeking prospective relief. You're not seeking damages. Correct. It's just that. Why isn't a statement at the time of the litigation by the defendants that they allow women, they allow girls, probably in this case, to participate in tackle football, and in fact, they can't be cut from the team, I think is the practice. Why, if that is the practice at the time, judgment is entered, why does that not survive equal protection? If that's the practice. Maybe there's some discrimination in the past, but since you're seeking only prospective relief, why isn't the important situation what occurs at the time of judgment? First of all, your honor, there you would still have what is effectively a covert practice here. Girls are not told they can participate. It's not in the manual. You cannot read, girls are allowed to participate in football, even today, anywhere that I've seen. Second, they're not actually accommodating within those rooms. When you go to an away game, there are not four locker rooms dedicated to the football. There's two locker rooms, one for the home team, one for the away team. Girls are being asked to change in utility closets, being asked to find places to change into their uniforms, being excluded from these sort of, maybe in our imaginations, but certainly very real in instances, locker room speeches, all of that was elicited from testimony. So even if you say, well, there is this practice that's not publicized that girls are allowed to play, isn't that enough? It seems that it would be enough if the question is what form of declaratory relief would satisfy rational basis scrutiny and subject to the equitable discretion of the district court? And if the question is, if the problem lies in the fact that there's not a facially neutral policy, it seems to me that a district court could equitably exercise his or her discretion to say, I'm gonna remedy that by saying, okay, there is now a policy that all girls and all boys will be eligible to participate in any football team within any of these school districts. And your problem with the restrooms is that's implicating the rationality of the policy and you've already conceded that if there's rational basis scrutiny, you lose on the protection claim. So why isn't the remedy overreaching on your part? In other words, you're saying, why wouldn't the district court first be able to take the classification based on gender, order that that go away and now we no longer have a gender classification? And then get a different remedy? I don't know if that's what question or not. And what I'm trying to ask you is if the problem is there's not a generally neutral classification, then the remedy would be to order a declaratory judgment instituting a gender neutral classification that all boys and girls will be eligible to participate on any of the football teams within these school districts. I think that that could get part of the way there, Your Honor, although I think frankly, you'd need to do much more than simply have a district court order here. And this exists in the Equal Protection Claims. You have history from 1898 to 1972 of discrimination against women in participation in sports and specifically in football. For that 75 years, no women were allowed. And a remedy that merely says, hey, in the 50 intervening years, since women finally were allowed to participate in sports, we've had this covert practice of allowing women to participate. And our remedy now is to say, hey, well, anybody can do it without taking further steps to eradicate all of the problems implicit in the history of discrimination. I think it doesn't go far enough under the Equal Protection Jurisprudence. Tell me what the problems are because of the history. The history might certainly support, the way you've described it at least, a claim for damages. But why isn't that, in terms of perspective relief, totally cleared up by saying women can participate, girls can participate? I think that the real question there, Your Honor, would be in what way you say that, right? And how that's made available to girls. And I think whether that's accommodated. Saying women can participate. But we've had, I can't remember if it was 91 or 121 girls have played tackle football in the district. Is that right? Since 1972 in the state of Utah, so these aren't all within the school districts, 330,000 boys have played football and 91 girls have played. And I think, Your Honor, if I may in my last minute here, I think there's an analogy that maybe makes clear why there has been an invidious classification here. And I think that if you were to look at this, not through the lens of gender, but through the lens of race, you'd realize that if you looked at all of these factors in the same way, it would be extraordinarily clear you'd laugh anyone out of the room who said there hadn't been a classification. If the school districts offered buses for whites only from 1898 to 1972, and then they offered other modes of transportation for whites only. But then in 1972, they started offering, people of color can ride, they can ride bicycles, they can ride cars, but the bus, we still have a whites only label on that bus. That bus still says whites only. And at some point, unspecified, we started saying, we had a practice, an inconsistent practice that a person of color attempted to get on the bus, we wouldn't kick them off. We never advertised that, we never wrote it down in policy, we never did anything like that. And over time, we had 330,000 white people ride the bus and 91 people of color. And then when there was a lawsuit, there was a declaration file in which the executive director of the agency said, this is a white, if I may just finish this thought, I realize I'm out of time here. Very quickly. If you had a declaration sign that said, whites only sports and sports that people of color can participate in, and the bus was only whites only, I think there'd be no problem, nor would there take even more than a moment to determine that there has been a classification based on race. And a similar conclusion should apply here. Thank you. Thank you. Thank you. Good morning, Your Honor. May it please the court, I'm Joshua Davidson, Assistant Utah Solicitor General on behalf of the school district athletes. I'm splitting time with counsel for UHSAA and I will take eight minutes. This court should dismiss the appeal of the student's individual Title IX claims because they are moot, and should affirm the district court's judgment on the equal protection football class claim. The counsel conceded their individual Title IX claims are moot, so I'd just like to turn to the protection football class claim. Now, have they, I mean, they didn't respond to that in the reply brief, and there was an email that was attached, but I didn't see anything from the plaintiffs that expressly conceded that their individual claims were moot. Well, the email that he wrote to me, he said, we understand that the claims are moot, we've always conceded that the individual claims are moot, it's exhibited to our opposition. So why aren't the putative class action claims still before us? They are, this court has a jurisdiction to do that. So the merits of the Title IX claim is still before us? If the court finds that the district court abuses its discretion in not certifying a Title IX football class, then you can reach it, but, you know, if the court did not abuse its discretion in declining to certify a Title IX football class, consider the questions that were identified by the students, and evaluated them, and determined that there was no commonality, that was not an abuse of discretion, it was in the range of rational choices that the district court made, and actually it bore itself out of trial when the court's concerns about having to look to the different specific schools to determine whether there was interest, sufficient interest, or abilities to save teams. It was all over the map of the different schools, so it bore itself out, so. You can focus on the equal protection claims if you wish, but don't think that you got a free ride on the Title IX claims. Well, Jay, if you have any other questions before now, I'll switch the title to equal protection. The presentation you wish to make. So, the students' arguments boil down to, on the equal perspective of protection, an impermissible request for this court to re-weigh the evidence. The district court found that as a matter of practice and policy, that football was open to both boys and girls. This was not clear error, it was supported by a lot of evidence before the trial, including that every UHSAA manual entered into evidence stated that it was open to both boys and girls. The girls have been playing football in Granite School District since 1986. They've been playing football in Jordan School District for over 20 years, and they've always been playing football in Canyon School District since it broke off from. But is it equal treatment if they don't have the same facilities? If they can't attend the meetings of the team in the locker rooms, they have to find their own place to change. That seems to me to be the principal difference in how the girls and boys are treated. Is that really consistent with equal protection requirements? Well, as your Honor relayed, the question about changing rooms is a rational basis inquiry. Because they're conceding that the policy is neutral on its face, that this is open to all. And so the complaint about changing rooms, the district court listened to this and it's determined that this wasn't evidence of invidious discriminatory intent on the part of the school districts. And that was supported by the evidence that some of the girls testified that they had great experiences playing football on the football teams, including Ms. Nogales. I would like to clarify a statement the counsel made. She was told, she was never told she could not play football. She was, in her first high school, was told she could play football but could only be a kicker. And then she didn't like that, and so she changed to Granger High School where she could play other positions. And she testified that she had a good and very good experience, and she felt that she was valued and she enjoyed playing with the boys on the team. In addition, additional testimony was that girls were encouraged to play by their teachers and administrators. People asked Ms. Gordon if she was going to play, because they knew that she was interested. So they asked her if she was going to play. People asked Ms. Robeson, the boys on the play football asked, told her that they thought she should play. So every girl knew that they could play football, and some of the girls actually did play football. And the student's witness, LG, had great success playing football. She was very successful as a freshman. She was the sophomore football team captain. She was one of only 10 sophomores that were asked to dress for varsity games, and she played at meaningful times in both sub-varsity and varsity games. So the district court considered all of this when it determined that there was a policy and practice that was neutral on this case. The district court also concluded that they failed to prove invidious discriminatory purpose. The students were required to establish a trial, and the decision makers selected or reaffirmed a particular course, at least in part because of, and not merely in spite of its adverse effects on an identifiable group, and they failed to do so. Council appointed to the disparate numbers the low participation rates, but as the district court determined and found, the girls with low participation rates could be explained by reasons other than intentional sex discrimination, including fear of injury, concerns of physical differences in size, discouragement from playing by people outside the district, including Mr. Gordon, who discouraged the girls from playing. And also the survey results. Of the girls surveyed, 43% didn't play any sports, and of that group, nearly 50%, 47% said they were not interested in playing competitive sports, and another 22% said that they prioritized other school activities over sports, so that it was much evidence besides purposeful discrimination for the low numbers. I see that my time is up, so I'd like to turn it over to Council for you, HSA. I haven't moved this quickly in 10 years. I'm sure this is not the first case in which people making an argument feel like, perhaps, they attended a different trial than the previous people who made arguments, and that's the case here. In the trial, which is a three-week trial, there was much evidence presented, including testimony, a couple of hours, maybe three hours of testimony by the Executive Director, Mr. Rob Cuff. In which all of these issues were presented, and he explained that for so long as he could determine, going back and checking all of the records, girls had been permitted to play football in Utah under the rules and policies of the Utah High School Activities Association. It had a gender-neutral policy, or sex-neutral, I'm not sure of the words, I'm supposed to say. How do you account for the documents listing football, tackle football, as a male sport? He made a mistake when he did it, and he explained that at trial. The same argument was raised at trial, and the court found that. You mean it only happened once? Yes. There was only one document? He made that, he made a mistake in the declaration, and explained it. And that only occurred on one occasion? Yes. Otherwise, all the official documents referred to tackle football as a sport open day? Males and females? Or? Well, so far as I recall the evidence, all the evidence that was presented, I mean, there were arguments that certain things may have implicated the idea that it was not possible for girls to play. I mean, it's been described here as covert, so covert that all of the plaintiffs actually found out about it and played football. So it wasn't much of a covert opportunity for them to play. The reality is that it is on its face, gender neutral, on its face, non-discriminatory. And taking that as what the court found, which it did, what the students are asking you to do is to upset all athletic programs in this circuit by making a ruling that indicates that any school, any state-sponsored school, from community colleges to universities that has football as a program must also sponsor girls' tackle football. What if you had a unisex wrestling team, and there were three wrestling classes, 200 pounds, 225 pounds, and 250 pounds, and the policy expressly said all girls and boys can participate on an equal basis. And the reality is there were very few, virtually none, of the girls that would be interested in wrestling that would be big enough to compete without serious risk of physical injury against the much bigger boys. Would that policy be facially neutral on a gender basis because on its face it allowed girls and boys to participate equally? Yes, on its face it would be. I suppose the question to be raised, and you may be making that argument, is why would not people who are administering that sport administer it in weight categories, as is exactly what happens. Wrestling has 90-pound wrestlers up to the 225-pound wrestlers. Or, perhaps, could they on their own decide that women should have their own wrestling program, which happens, it's happened in the state of Utah. And that occurred after it was made clear that there was sufficient interest in girls' wrestling, that it could take on a sanction of championships for it, and be competed in every portion of the state, not just in a couple of high schools, which is one of the problems that existed here. But the issue, for me, is this. It is completely facially neutral. And despite the fact that it is, and now they've said, the students have said, that they put all of their equal protection aides in that gender bias category. The court has already made a determination of fact, which it did after hearing all of the testimony, including reading the declaration, hearing what the executive director had to say, cross-examination, none of which I don't think you really want to do again. He made a determination that it was facially neutral. And he went through the other aspects that had been argued there, but because they're not being argued here, I won't go through it, but you can see what he did in his order. The thing that I think that is being missed here is that what the, and it goes to your point, Your Honor, what Mr. Gordon, the lawyer in the case, whose daughter was a football star as a kid and was one of the plaintiffs, but what he said, I think, really makes the point. He said that the equal protection issue was that girls did not have the physical capability to compete with boys. That's what he thought was the equal protection issue. Well, that makes it very difficult how to parse out when it's equal protection depending on whether a boy has the physical capability of playing on the high school team or a girl. And so the association has left it open for boys and girls. There is a program that the association has called the Emerging Sports Program in which they follow the sports that are being played around the state. And if girls tackle football were to continue to grow and show that it had range in the state, it would likely become a championship sport. That's how it ordinarily works. It doesn't work by coming into court and saying that a facially neutral policy, sorry, I'm not accustomed to this, a facially neutral policy is one that it violates equal protection law. That's an unusual statement. The relief requested would work a hardship on every state school in this district. And I ask that the court dismiss the appeal. Thank you for listening. Thank you, counsel. The case is submitted. Counsel are excused.